PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.
21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:     (818) 883-4900
Fax:            (818) 883-4902
Email:          peter@dion-kindemlaw.com

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:     (213) 599-8255
Fax:            (213) 402-3949
Email:          lonnieblanchard@gmail.com

JEFF HOLMES (SBN 100891)
HOLMES LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:     (310) 396-9045
Fax:            (970) 497-4922
Email:          jeffholmesjh@gmail.com

Attorneys for Plaintiff Elizabeth Larroque

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Elizabeth Larroque, an individual, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> First Advantage LNS Screening Solutions, Inc., and Does 1 through 10, <br> Defendants. | 3:15-CV-04684-JSC <br><br> **Plaintiff's Memorandum re Order to Show Cause re Jurisdiction** <br><br> Date:     **July 28, 2016** <br> Time:     **9:00 a.m.** <br> Crtrm:    **Courtroom F, 15th Floor in San Francisco** |

### TABLE OF CONTENTS

I.      This Court has jurisdiction over Plaintiff's FCRA claim. .............................................. 1

        A.      The applicable statutory text. ............................................................................. 1

        B.      Plaintiff's allegations. ........................................................................................ 1

        C.      The statutory background of the FCRA. ............................................................ 3

        D.      The Court's decision in *Spokeo* did not change the requirements for Article III standing. ............................................................................................................. 5

        E.      Plaintiff has suffered concrete harm because Defendants invaded Plaintiff's privacy by furnishing a consumer report to Plaintiff's employer without first obtaining the requisite certifications from the employer. .................................... 7

II.     If the Court concludes that it has no jurisdiction, then it must remand the case to the state court from which it was removed. .............................................................................. 10

III.    Conclusion. .................................................................................................................... 11

1

## Table of Authorities

2

## Cases

3   *Boelter v. Hearst Communications, Inc.,* (S.D.N.Y., June 17, 2016, No. 15 CIV. 3934 (AT)) 2016 WL
4       3369541...............................................................................................................................9

    *Bruns v. National Credit Union Admin.* (9th Cir. 1997) 122 F.3d 1251 ................................10
5
    *Cousineau v. Microsoft Corp.* (W.D. Wash. 2012) 992 F.Supp.2d 1116 ..................................9
6
    *Coyne v. American Tobacco Co.* (6th Cir. 1999) 183 F.3d 488 ................................................11
7
    *Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409 ...........................3
8
    *Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363 ...........................................................3
9
    *In re Nickelodeon Consumer Privacy Litigation* (3d Cir., June 27, 2016, No. 15-1441) 2016 WL
10      3513782...............................................................................................................................9

11  *International Primate Protection League v. Administrators of Tulane Educational Fund* (1991) 500 U.S.
        72.......................................................................................................................................10
12
    *Johnson v. Navient Solutions, Inc.* (S.D. Ind. 2015) 150 F.Supp.3d 1005 ..............................9
13
    *Kelchner v. Sycamore Manor Health Center* (M.D. Pa. 2004) 305 F.Supp.2d 429 .................8
14
    *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555 ..........................................................6, 10
15
    *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dept. of Human Services* (1st
16      Cir. 1989) 876 F.2d 1051 ..................................................................................................11

17  *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 {9th Cir. 2001).......................................8

18  *Pavesich v. New England Life Ins. Co.* (1905) 122 Ga. 190....................................................7

19  *Robinson v. Equifax Information Services, LLC* (4th Cir. 2009) 560 F.3d 235.........................3

20  *Spokeo, Inc. v. Robins* (2016) 136 S.Ct. 1540 .............................................................. passim

21  *Steel Co. v. Citizens for a Better Environment* (1998) 523 U.S. 83.........................................5

22  *Sterk v. Redbox Automated Retail, LLC* (7th Cir. 2014) 770 F.3d 618 ...................................9

23  *Summers v. Earth Island Institute* (2009) 555 U.S. 488 .........................................................6

24  *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press* (1989) 489 U.S. 749.......8

25  *U.S. v. Koranki* (W.D. Okla., July 16, 2015, No. CR-10-43-D) 2015 WL 4394947.................9

26  *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014)...................................11

27  *Wheeler v. Travelers Ins. Co.* (3d Cir. 1994) 22 F.3d 534.......................................................11

28

**Plaintiff's Memorandum re OSC re Jurisdiction**

### Statutes

12 U.S.C. § 3417 ............................................................................................................. 9

15 U.S.C. § 1681(a) ..................................................................................................... 3, 4

15 U.S.C. § 1681(b) ........................................................................................................ 3

15 U.S.C. § 1681h(e) ...................................................................................................... 8

15 U.S.C. Section 1681b(b) ............................................................................................ 1

15 U.S.C. Section 1681p ............................................................................................... 10

18 U.S.C. § 2707(c) ........................................................................................................ 9

18 U.S.C. § 2710(c)(1) ................................................................................................... 9

28 U.S.C. Section 1447(c) ...................................................................................... 10, 11

### Other Authorities

116 Cong. Rec. 36570 (1970) ........................................................................................ 3

138 Cong. Rec. H9370-03 (1992) .................................................................................. 4

140 Cong. Rec. H9797-05 (1994) .................................................................................. 4

Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now*, SCOTUSblog (May 16, 2016) .................................................................. 6

Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*, Geo. Wash. L. Rev. On the Docket (May 19, 2016) ......................................................... 6

Restatement (Second) of Torts § 652A (1977) .............................................................. 7

S. Rep. No. 104-185 ................................................................................................... 4, 8

S. Rep. No. 517, 91st Cong., 1st Sess. 2 ....................................................................... 3

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 ............................. 7

Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890) .................... 8

I.      **THIS COURT HAS JURISDICTION OVER PLAINTIFF'S FCRA CLAIM.**

      **A.      The applicable statutory text.**

      15 U.S.C. Section 1681b(b) of the FCRA regulates the conduct of "persons" who furnish or use a "consumer report" for employment purposes as follows:

> (b) Conditions for furnishing and using consumer reports for employment purposes
>
>     (1) Certification from user
>
>     ***A consumer reporting agency may furnish a consumer report for employment purposes only if* --**
>
>         (A) the person who obtains such report from the agency certifies to the agency that--
>
>            (i) the person ***has complied*** with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
>
>            (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and
>
>         (B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.
>
>     (2) Disclosure to consumer
>
>       (A) In general
>
>       Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
>         (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
>         (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person. . . . (Emphasis added.)

      **B.      Plaintiff's allegations.**

      In this case, Defendant First Advantage LNS Screening Solutions, Inc. ("First Advantage") was a consumer reporting agency ("CRA") that "furnished" a consumer report concerning Plaintiff and other class members to prospective or current employers. Pursuant to Section 1681b(b)(1), First Advantage

was not authorized to "furnish" a consumer report regarding Plaintiff to any person for employment

purposes unless and until such person "certified" to First Advantage that it --

> (i) **has complied** with paragraph (2) with respect to the consumer report, and the person **will comply** with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

> (ii) information from the consumer report **will not be used** in violation of any applicable Federal or State equal employment opportunity law or regulation . . . (Emphasis added.)

Plaintiff is alleging that First Advantage violated its obligations under Section 1681b(b)(1):

> 5.      Defendant First Advantage LNS Screening Solutions, Inc. ("First Advantage") is a "person" as defined by the FCRA. At all times relevant hereto, First Advantage was a "consumer reporting agency" governed by the FCRA. During the relevant time, First Advantage was regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. Section 1681(d), to third parties, including Pacific Hotel Management, LLC for employment purposes. First Advantage furnished consumer reports to Pacific Hotel Management, LLC concerning Plaintiff and other class members and also furnished consumer reports to other persons concerning class members for employment purposes.

> . . .

> 9.      On or about September 17, 2012, Pacific Hotel Management, LLC procured or caused to be procured a consumer report regarding Plaintiff from First Advantage.

> 10.      Defendants violated Section 1681b(b)(1) by furnishing consumer reports regarding Plaintiff and other class members for employment purposes to Pacific Hotel Management, LLC and others without first obtaining from Pacific Hotel Management, LLC and other persons to whom Defendants furnished such reports a certification by such person as to each consumer report it furnished to such person that such person "has complied with paragraph (2) [of Section 1681b(b)] with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) [of Section 1681b(b)] becomes applicable."

These allegations establish First Advantage's violation of its obligations under the FCRA.

By providing Plaintiff's (and numerous other class members') consumer reports without first

obtaining the proper certifications required by Section 1681b(b)(1), Defendant invaded her privacy—

one of the very harms that specifically motivated Congress to enact the FCRA and the right to which has

long been recognized by the common law. Because Plaintiff was the object of a violation of the FCRA's

certification requirements, Plaintiff "suffered injury in precisely the form the statute was intended to

guard against, and therefore has standing." *Havens Realty Corp. v. Coleman* (1982) 455 U.S. 363 [102 S.Ct. 1114, 71 L.Ed.2d 214].

## C.   The statutory background of the FCRA.

The legislative history of the FCRA underscores the nature and importance of the rights created by the statutory text. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry." *Dalton v. Capital Associated Industries, Inc.* (4th Cir. 2001) 257 F.3d 409, 414. Specifically, Congress intended to address developments in "computer technology [that] facilitated the storage and interchange of information" and "open[ed] the possibility of a nationwide data bank covering every citizen." S. Rep. No. 517, 91st Cong., 1st Sess. 2 ("Senate Report"). As Representative Sullivan remarked, "with the trend toward . . . the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970)

With the advent of these "computerized data banks," Congress "found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment." *Dalton*, 257 F.3d at 414. Therefore, Congress sought "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information," and "to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information." Senate Report at 1.

Congress enacted the Fair Credit Reporting Act in 1970 to protect the "consumer's right to privacy" by ensuring "the confidentiality, accuracy, relevancy, and proper utilization" of consumer credit information. 15 U.S.C. § 1681(b). Recognizing the "vital role" that consumer reports play in the modern economy, Congress sought to encourage those handling the sensitive information in those reports to "exercise their grave responsibilities" in a way that "ensure[s] fair and accurate credit reporting." 15 U.S.C. § 1681(a); *Robinson v. Equifax Information Services, LLC* (4th Cir. 2009) 560 F.3d 235, 239. The FCRA fosters these purposes through a set of interlocking requirements—including strict restrictions on the use of reports for various purposes and detailed requirements about how

consumers must be informed of their rights and what steps credit reporting agencies must take in obtaining specifically designated certifications from their clients before "furnishing" consumer reports to them.

A prime motivation for the FCRA was the impact of third-party data collection on the employment market and particularly on individual job seekers. When it passed the FCRA, Congress voiced a strong "concern[]" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995). As one legislator explained, the FCRA's protections represented "new safeguards to protect the privacy of employees and job applicants"; the Act as a whole, he continued, was "an important step to restore employee privacy rights." 140 Cong. Rec. H9797-05 (1994) (Statement of Congressman Vento); *see also* 138 Cong. Rec. H9370-03 (1992) (Statement of Congressman Wylie) (stating that the FCRA "would limit the use of credit reports for employment purposes, while providing current and prospective employees additional rights and privacy protections").

In sum, the FCRA reflects Congress' concern with the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). It is clear from the statute's legislative history that Congress intended that the FCRA be construed to promote the credit industry's responsible dissemination of accurate and relevant information and to maintain the confidentiality of consumer reports. To that end, it was Congress' judgment, as clearly expressed in Sections 1681b (b)(1), (2) and (3) to afford consumers rights to information and privacy.

Under the FCRA, a CRA such as First Advantage is only allowed to ***furnish a consumer report for employment purposes if it first receives the required certifications from the person to whom it is providing such report.*** Here, Plaintiff alleges that First Advantage furnished Plaintiff's and other class members' consumer reports to Plaintiff's prospective employer and others without first obtaining the requisite certifications from them, thereby violating their rights of privacy.

1

2

**D.    The Court's decision in *Spokeo* did not change the requirements for Article III standing.**

3

4

5

6

7

To have standing to bring a claim in federal court, the plaintiff must first have suffered an injury in fact. This requirement has two components: the injury must be both (1) particularized and (2) concrete. The injury suffered by Plaintiff is clearly sufficiently "particularized." Plaintiff has cited the statutory provisions that Defendant violated and expressly stated how Defendant violated such provisions.

8

9

10

11

12

Plaintiff has also suffered "concrete" injury resulting from Defendant's alleged FCRA violations. The Court in *Spokeo* did not change the legal framework for analyzing standing nor overrule any of the relevant precedent. Instead, the Court simply reiterated that the Article III standing inquiry asks not only whether an injury is particularized, but also whether it is concrete— "that is, it must actually exist." *Spokeo, Inc. v. Robins* (2016) 136 S.Ct. 1540, 1548, *as revised (May 24, 2016).*

13

14

15

16

17

18

19

20

21

22

23

24

Elaborating on the meaning of concreteness, the Court in *Spokeo* distilled several "general principles" from its prior cases, without going beyond those cases. *Id.* at 1550. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. Thus, if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id.* at 1549-50; *see also Steel Co. v. Citizens for a Better Environment* (1998) 523 U.S. 83, 102 [118 S.Ct. 1003, 1016, 140 L.Ed.2d 210] (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

25

26

27

A plaintiff is not required to identify a common-law analogue to establish a concrete injury, however. This is because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously

28

inadequate in law." *Spokeo*, 136 S.Ct. at 1549. Accordingly, the third principle emphasized in *Spokeo* is that Congress can elevate even procedural rights to a concrete injury if they protect against an identified harm. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Id.* at 1549-50, but a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." *Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 572 [112 S.Ct. 2130, 2142, 119 L.Ed.2d 351].

Critically, none of these principles are new. *See, e.g.*, Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now*, SCOTUSblog (May 16, 2016), http://bit.ly/1TB3vd1 (describing *Spokeo* as a "narrow" decision); Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*, Geo. Wash. L. Rev. On the Docket (May 19, 2016), http://bit.ly/20fyAmS. Moreover, the Court in *Spokeo* did not even apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, concluding that the Ninth Circuit's previous analysis was "incomplete" because it had "overlooked" concreteness. *Spokeo,* 136 S.Ct. at 1545. The Court, in other words, offered no assessment of the Ninth Circuit's analysis below, aside from its determination that the Ninth Circuit had failed to analyze concreteness as a separate step in the injury-in-fact inquiry.

Although it is true that, after *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation," that was just as true *before Spokeo. See, e.g.*, *Summers v. Earth Island Institute* (2009) 555 U.S. 488, 497 [129 S.Ct. 1142, 1151, 173 L.Ed.2d 1] ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Thus, *Spokeo* has done very little to change (or even clarify) the law; it simply summarizes the doctrine and provides examples of injuries that might (or might not) constitute sufficiently concrete harm.

1

2

**E.     Plaintiff has suffered concrete harm because Defendants invaded Plaintiff's privacy by furnishing a consumer report to Plaintiff's employer without first obtaining the requisite certifications from the employer.**

3

4

Defendants' violations of the FCRA caused Plaintiff a well-established cognizable injury—

5

invasion of privacy—which is clearly sufficient to confer Article III standing. Under the FCRA,

6

Defendant was not authorized to "furnish" a consumer report regarding Plaintiff to any person for

7

employment purposes ***unless and until such person first*** "certified" to First Advantage that it --

8

> ***has complied*** with paragraph (2) with respect to the consumer report, and the person ***will comply*** with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

9

10

> (ii) information from the consumer report ***will not be used*** in violation of any applicable Federal or State equal employment opportunity law or regulation . . . (Emphasis added.)

11

Plaintiff alleges that Defendant violated this provision by furnishing a consumer report

12

concerning Plaintiff to Plaintiff's employer without first obtaining the required certifications. Put

13

simply, Defendant unlawfully invaded Plaintiff's privacy by furnishing clearly private and personal

14

information to Plaintiff's employer—a clear form of concrete harm.

15

The invasion of privacy is a quintessential "harm that has traditionally been regarded as

16

providing a basis for a lawsuit in English or American courts," and thus is a legally cognizable injury for

17

standing purposes. *Spokeo*, 136 S.Ct. at 1549. For more than a century, American courts have

18

recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting

19

harm to the interests of the other." Restatement (Second) of Torts § 652A (1977); *see id.* comment a

20

(noting that "the existence of a right of privacy is now recognized in the great majority of the American

21

jurisdictions"). In his seminal 1890 article on the right to privacy, Justice Brandeis explained even then

22

that "what is ordinarily termed the common-law right to intellectual and artistic property are . . . but

23

instances and applications of a general right to privacy." Samuel D. Warren & Louis D. Brandeis, *The*

24

*Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890). American courts at the turn of the century identified

25

the right of privacy as "derived from natural law" and traced the concept back to Roman and early

26

English legal traditions. *Pavesich v. New England Life Ins. Co.* (1905) 122 Ga. 190 [50 S.E. 68, 70].

27

Because there can be no doubt that harms to an individual's privacy have traditionally been regarded as

28

a cognizable basis for suit, Plaintiff's privacy injury here is sufficiently concrete "to constitute injury in fact." *Spokeo*, 136 S.Ct. at 1549.

The common law has long recognized a right to personal privacy, and "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Justice v. Reporters Committee For Freedom of Press* (1989) 489 U.S. 749, 763 [109 S.Ct. 1468, 1476, 103 L.Ed.2d 774] (defining "private" as "intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public"). Moreover, as the Supreme Court has observed, the right to privacy in compilations of personal information is particularly powerful because the "power of compilations to affect personal privacy that outstrips the combined power of the bits of information contained within." Id. at 765. Accordingly, it has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue. See generally Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890).

Moreover, Congress specifically enacted the FCRA to safeguard the privacy of job seekers like Plaintiff. As described above, Congress was openly "concerned" that "permit[ting] employers to obtain consumer reports pertaining to current and prospective employees . . . may create an improper invasion of privacy." S. Rep. No. 104-185, at 35 (1995). The FCRA thus "sought to protect the privacy interests of employees and potential employees by narrowly defining the proper usage of these reports and placing strict disclosure requirements on employers." *Kelchner v. Sycamore Manor Health Center* (M.D. Pa. 2004) 305 F.Supp.2d 429, 435, *aff'd* (3d Cir. 2005) 135 Fed.Appx. 499; *see also id.* at 436 ("the Act provides strong protections against misuse of employees' personal information").

It is also well-settled that Congress may create a statutory right to privacy in certain information that strengthens or replaces the common law,[1] and citizens whose statutory right to informational

---

[1] Indeed, in the case of the FCRA, Congress explicitly preempted suits for invasion of privacy, "except as to false information furnished with malice or willful intent to injure [the] consumer." 15 U.S.C. § 1681h(e); *see also Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 {9th Cir. 2001) ("When a consumer brings an action for violation of the disclosure provisions of the FCRA, the Act's purpose of protecting consumer confidentiality is implicated. In that respect, such cases are akin to invasion of privacy cases under state

privacy has been invaded may bring suit under the statute to vindicate that right. *See, e.g.*, 18 U.S.C. § 2707(c) (authorizing statutory damages for violations of the Electronic Communications Privacy Act of 1986 ("ECPA")); 12 U.S.C. § 3417 (statutory damages available under the Right to Financial Privacy Act ("RFPA")); 18 U.S.C. § 2710(c)(1) (establishing a private right of action under the Video Privacy Protection Act ("VPPA").)

Furthermore, where a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of actual damages. *See, e.g., In re Nickelodeon Consumer Privacy Litigation* (3d Cir., June 27, 2016, No. 15-1441) 2016 WL 3513782, at *7 (noting that "Congress has long provided plaintiffs with the right to seek redress for unauthorized disclosures of information that, in Congress's judgment, ought to remain private") (footnote omitted); *Sterk v. Redbox Automated Retail, LLC* (7th Cir. 2014) 770 F.3d 618, 623 (holding that the plaintiffs suffered a concrete injury-in-fact when defendant sold plaintiffs' information to third parties in violation of the VPPA); *Boelter v. Hearst Communications, Inc.,* (S.D.N.Y., June 17, 2016, No. 15 CIV. 3934 (AT)) 2016 WL 3369541, at *3 (same); *Johnson v. Navient Solutions, Inc.* (S.D. Ind. 2015) 150 F.Supp.3d 1005 (finding standing based on a violation of the plaintiff's statutory right to privacy created by the Telephone Consumer Protection Act ("TCPA")); *U.S. v. Koranki* (W.D. Okla., July 16, 2015, No. CR-10-43-D) 2015 WL 4394947, at *1 (finding that the government's failure to follow necessary procedures before procuring bank customer's financial records invaded the customer's statutory right to privacy under the RFPA, which conferred standing); *Cousineau v. Microsoft Corp.* (W.D. Wash. 2012) 992 F.Supp.2d 1116, 1122-23 (finding an invasion of privacy sufficient to constitute injury-in-fact where defendant collected smartphone user's location data without her consent).

Here, Defendant furnished a consumer report regarding Plaintiff to Plaintiff's employer without first obtaining the required certifications from the employer, thereby invading her privacy in the process. The Supreme Court explained in *Spokeo* that "Congress may 'elevat[e] to the status of legally

---

law—cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential.") (collecting cases).

cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan*, 504 U.S., at 578). Here, Congress recognized that employers' procurement of consumer reports without adequate disclosure and authorization and certification by the employer harmed individuals' privacy interests—a concrete injury that had considered *adequate* long before Congress enacted the FCRA. This allegedly unauthorized disclosure of personal information constitutes an invasion of the statutory right to privacy and a concrete injury sufficient to confer Article III standing. Thus, there is no doubt that Plaintiff has standing to bring her Section 1681b(b)(1) claim.

## II. IF THE COURT CONCLUDES THAT IT HAS NO JURISDICTION, THEN IT MUST REMAND THE CASE TO THE STATE COURT FROM WHICH IT WAS REMOVED.

If the Court concludes that it has no jurisdiction over Plaintiff's claim, the Court must remand the case to state court from which it was removed. 15 U.S.C. Section 1681p provides that an action for violation of the FCRA may be brought in a federal district court or "in any other court of competent jurisdiction":

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction . . .

Thus, California state courts have concurrent jurisdiction over Plaintiff's claim, which is why Plaintiff originally filed this claim in state court, from which court Defendant removed the action.

If the Court determines that it has no jurisdiction over Plaintiff's claim because of the alleged lack of Article III standing, the Court must remand the case to state court. 28 U.S.C. Section 1447(c) provides in relevant part:

> . . . If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, ***the case shall be remanded***. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . . (Emphasis added.)

The language of this statute is mandatory. *International Primate Protection League v. Administrators of Tulane Educational Fund* (1991) 500 U.S. 72, 89 [111 S.Ct. 1700, 1710, 114 L.Ed.2d 134]; *Bruns v. National Credit Union Admin.* (9th Cir. 1997) 122 F.3d 1251, 1257 ("Section 1447(c) is mandatory, not discretionary.).)

In *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dept. of Human Services* (1st Cir. 1989) 876 F.2d 1051, 1053-54, the Court explained why remand is required:

> The district court determined that MAIN did not fulfill the minimal, constitutional requirements for standing, *i.e.,* that its members suffered no "immediate or threatened injury," *see Warth,* 422 U.S. at 511, 95 S.Ct. at 2211. This is a determination that the district court lacked subject matter jurisdiction. *See Bender v. Williamsport Area School District,* 475 U.S. 534, 541-42, 106 S.Ct. 1326, 1331-32, 89 L.Ed.2d 501 (1986) (standing is jurisdictional question); *Heckler v. Mathews,* 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984) (standing inquiry rests on Article III "case or controversy" requirement). Hence, the literal words of the statute, saying that the case "shall" (not "may") be remanded, require the court to remand the case. *See Langford v. Gates,* 610 F.Supp. 120, 122-23 (D.C.Cal.1985) (lack of standing is a jurisdictional defect, and "the proper course is remand" under § 1447(c), "not dismissal").

*See also Wheeler v. Travelers Ins. Co.* (3d Cir. 1994) 22 F.3d 534, 540 (". . . a determination that there is no standing 'does not extinguish a removed state court case.' . . . Rather, federal law "only requires ... [us] to remand [Wheeler's case] to state court." *Id.* (citing 28 U.S.C. § 1447(c)). Accordingly, we will direct that the case be remanded to the state court."); *Coyne v. American Tobacco Co.* (6th Cir. 1999) 183 F.3d 488, 496 (where district court lacks subject matter jurisdiction, removed action must be remanded to the state court from which it was removed); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) (if jurisdiction is lacking and "the case did not originate in federal court but was removed there by the defendants, the federal court ***must*** remand the case to the state court from whence it came.")

## III.   CONCLUSION.

For the reasons provided above, this Court has jurisdiction over Plaintiff's claim. If the Court determines that it has no jurisdiction, it must remand the case to state court.

Dated: July 13, 2016                    THE DION-KINDEM LAW FIRM

BY:   _____

PETER R. DION-KINDEM, P.C.
PETER R. DION-KINDEM
Attorney for Plaintiff Elizabeth Larroque